OPINION
{¶ 1} James Harold Howell II appeals from a judgment entry and decree of divorce entered by the Clark County Court of Common Pleas, which determined parental rights, property distribution, and support obligations. The judgment entry also held Mr. Howell in contempt for failure to pay child and spousal support pursuant to temporary orders previously entered by the court and ordered him to pay Mrs. Howell's attorneys fees.
 {¶ 2} James and Kathy Sue Howell were married in 1976, and three children were born of the marriage. The parties separated in December 1997, and Mrs. Howell filed a complaint for divorce in May 1998. The divorce proceedings were protracted because each of the parties filed for bankruptcy while the divorce was pending. Temporary support orders were in effect throughout this period. When the trial court's hearing began in 2001, two of the parties' children were emancipated.
 {¶ 3} While the case was pending, in March 2000, Mr. Howell filed a motion for reduction of child support due to the fact that he had become disabled from his employment as a deputy sheriff. Mr. Howell had suffered an injury affecting his vision that had made it impossible for him to fire a gun accurately or to drive at high rates of speed. The trial court did not rule on this motion prior to the hearing. Mr. Howell also filed a proposed shared parenting plan the day before the hearing concluded.
 {¶ 4} A hearing was held on May 1, June 25, June 27, July 18, October 23, October 24, October 30 and December 5, 2001, and on April 24 and 25, 2002. The parties' marital debts had been discharged in bankruptcy and their house had been destroyed by termites during the pendency of the proceedings, so few property issues remained to be resolved. However, the matters before the court included Mr. Howell's alleged contempt of court for failing to pay child and spousal support pursuant to the court's temporary orders and failing to keep Mrs. Howell on his dental insurance, as well as child support, spousal support, allocation of parental rights, and payment of Mrs. Howell's attorneys fees. The court heard a considerable amount of evidence on these issues.
 {¶ 5} The trial court entered its judgment entry and decree of divorce on June 20, 2002, and it contained the following relevant provisions. The court found Mr. Howell in contempt of court for failing to pay child and spousal support when he had been able to make such payments and for failing to maintain Mrs. Howell's dental insurance. It rejected Mr. Howell's shared parenting plan as untimely and as unfeasible due to the parties' inability to cooperate. The trial court ordered that Mrs. Howell be designated as Jacob's residential parent and legal custodian. The court established child support in the amount of $322.32 per month and spousal support in the amount of $400 per month for twelve years. The court also ordered Mr. Howell to pay Mrs. Howell's attorneys fees from the divorce proceedings.
 {¶ 6} Mr. Howell raises five assignments of error on appeal.
 {¶ 7} "I. The Trial Court Abused Its Discretion In Sustaining Appellee's Motions, Finding Appellant In Contempt Of The Temporary Orders To Include Not Adjudicating Appellant's Pending Motion To Reduce The Temporary Orders."
 {¶ 8} Mr. Howell claims that the trial court should not have held him in contempt of court for his failure to pay child support and spousal support pursuant to the court's temporary orders because he had become disabled and had filed a motion with the court to reduce the amount of support.
 {¶ 9} The trial court found that Mr. Howell had had sufficient funds in his bank accounts to satisfy his child and spousal support obligations when they had become due. In other words, based on his bank records, the trial court rejected Mr. Howell's claim that he had been unable to pay due to his disability. The trial court did not abuse its discretion in so holding. Moreover, Mr. Howell's motion to reduce the support order did not entitle him to stop payment while the motion was pending. He did so at his own risk and was properly found to be in contempt.
 {¶ 10} Mr. Howell also argues that the trial court erred in finding him in contempt because there was no express finding of willful or intentional conduct on his part and because Mrs. Howell failed to make a demand upon him before initiating her motion for contempt. Mr. Howell has cited no authority for the proposition that Mrs. Howell was required to demand payment from him before initiating contempt proceedings when court orders already required Mr. Howell to make such payment, and we are aware of none. Moreover, in our view, the trial court could have reasonably inferred willful and intentional disregard for its orders from the evidence that Mr. Howell had had the ability to pay but had not done so.
 {¶ 11} Finally, Mr. Howell contends that the trial court erred in finding him in contempt for failing to keep Mrs. Howell as a covered dependent under his dental insurance when he became eligible for workers' compensation. Mr. Howell claims that he was unaware of the lack of insurance coverage. The record, however, tells a different story. At the hearing, Mr. Howell did not claim to have been unaware of the absence of coverage. Rather, he admitted that he had put himself and Jacob on the disability policy but had not included Mrs. Howell. He only claimed to have been unaware that Mrs. Howell had incurred expenses as a result of the lack of coverage. Mr. Howell's assertion in his brief that "the health insurance he received [under workers' compensation] did not include dental coverage" finds no support in the record. In fact, it is refuted by Mr. Howell's admission that he had signed up for such benefits for himself and his son. The trial court did not err in finding Mr. Howell in contempt in this respect.
 {¶ 12} The first assignment of error is overruled.
 {¶ 13} "II. The Trial Court Abused Its Discretion In Denying The Proposed Shared Parenting Plan Submitted By Appellant."
 {¶ 14} Mr. Howell claims that the trial court erred in refusing to order shared parenting, which was in Jacob's best interests. Mr. Howell claims that the trial court "clearly let its feelings relative to the child support arrearage issue taint its judgment" and, in essence, argues that the trial court did not properly weigh the evidence.
 {¶ 15} Mr. Howell acknowledges that a strong commitment to cooperation is essential to successful shared parenting. Notably, Mr. Howell does not dispute the trial court's conclusion that the parties "clearly lack the ability to cooperate and make joint decisions" with respect to Jacob. Rather, he disputes who is to blame for the lack of cooperation and highlights the perceived shortcomings of the lawyers, the experts, and the trial court's findings. The bottom line, however, is that there is no evidence in the record of past cooperation between the parties and little, if any, indication that such cooperation is likely in the future. The trial court's conclusion that shared parenting was not feasible does not appear to have been unduly influenced by Mr. Howell's failure to pay child support when he had the financial resources to do so. This choice on his part bore a rational relationship to his level of cooperation with Mrs. Howell and to his dedication to Jacob's welfare. The trial court did not err in considering it.
 {¶ 16} The trial court also correctly noted that Mr. Howell's proposed shared parenting plan was not timely filed. R.C. 3109.04(G) provides that a proposed plan for shared parenting shall be filed with the petition for dissolution of marriage or at least thirty days prior to the hearing on the issue of parental rights and responsibilities. In this case, no shared parenting plan was filed with the complaint for divorce. The hearing on the allocation of parental rights began on May 1, 2001 and continued on various dates through April 25, 2002. Mr. Howell filed his proposed shared parenting plan on April 24, 2002. Filing the proposed shared parenting plan almost a year after the hearing on parental responsibilities began and only one day before the hearing concluded clearly did not comply with the statutory provisions and did not afford Mrs. Howell an adequate opportunity to respond to it. The trial court could have reasonably rejected the plan on this basis alone.
 {¶ 17} The second assignment of error is overruled.
 {¶ 18} "III. The Trial Court Erred In Imputing Annual Income To Appellant For Calculation Of Child Support."
 {¶ 19} Mr. Howell contends that the trial court erred in including $10,000 in income from his home-based business, Electrotech, for purposes of calculating his support obligations. In the alternative, Mr. Howell argues that profits from Mrs. Howell's baking business should be included in her income if profits from Electrotech were to be included in his income.
 {¶ 20} Electrotech is a two-way radio sales and repair business that Mr. Howell had operated out of his home for several years at the time of the hearing. The evidence showed that Mr. Howell had reported losses from this business for several years. He also claimed that the amount of time that he could devote to Electrotech had "been significantly reduced due to his disability." Mrs. Howell presented evidence, however, that the expenses carried on Electrotech's books included two cars for Mr. Howell's and his girlfriend's personal use. Mr. Howell testified himself that his bankruptcy fees, living expenses, and "almost everything [he] wrote as a check" passed through the Electrotech accounts and that his draw in 2000 was $85,423.28. Taking all of this evidence into account, the trial court could have reasonably concluded that Mr. Howell's claim of having no income from Electrotech was lacking in credibility and that he should be charged with having $10,000 in income from that business.
 {¶ 21} Mr. Howell also argues that Mrs. Howell's income from her cookie business should be included in the support calculations if he was to be charged with income from Electrotech. We note that the trial court did include such income in its calculations: $8,800 from Mrs. Howell's job as a bus aide and $2,060 from the cookie business, for a total of $10,860 in income.
 {¶ 22} The third assignment of error is overruled.
 {¶ 23} "IV. The Trial Court Abused Its discretion In Awarding Appellee The Sum Of $400.00 Per Month In Spousal Support For Twelve (12) Years."
 {¶ 24} Mr. Howell objects to both the length and the amount of spousal support awarded by the trial court. He also claims that the trial court should have determined "a specific dollar amount of need" by Mrs. Howell.
 {¶ 25} Spousal support is no longer determined based on need; the focus of the determination is on the appropriateness and reasonableness of an award of spousal support. See R.C. 3105.18(C)(1); Brown v. Brown, Pike App. No. 02CA689, 2003-Ohio-304, ¶ 13. Although R.C. 3105.18
does not require a spousal support award to provide the parties with an equal standard of living, equity requires that a disadvantaged spouse receive sufficient spousal support to bring him or her up to a reasonable standard of living in light of the standard maintained during the marriage. Glass v. Glass (June 30, 2000), Trumbull App. No. 99-T-0045, unreported. Thus, the standard for awarding spousal support is not as rigid as Mr. Howell's argument suggests. The trial court was not required to determine a specific dollar amount of need.
 {¶ 26} The trial court thoroughly considered all of the factors set forth in R.C. 3105.18(C)(1) in arriving at its award of spousal support. Most notably, the court observed that Mrs. Howell was likely to incur greater living expenses because the parties' minor child lived with her and Mr. Howell shared living expenses with his girlfriend. According to the trial court, the evidence suggested that Mr. Howell may be able to continue to enjoy the above average standard of living that the parties had established during their marriage, but that Mrs. Howell's standard of living would likely be more modest. The court found that Mrs. Howell was not underemployed insofar as she had two part-time jobs and was actively seeking full-time employment in a position that would be compatible with Jacob's schedule. Based on these and other factors, the trial court determined that a spousal support award of $400 per month for twelve years, or roughly half the length of the parties' marriage, was appropriate and reasonable. This award does not reflect an abuse of the trial court's discretion.
 {¶ 27} The fourth assignment of error is overruled.
 {¶ 28} "V. The Trial Court Abused Its Discretion In Awarding Appellee The Sum Of $14,862.70 In Attorney Fees And Costs."
 {¶ 29} Mrs. Howell's attorneys fees from the filing of the complaint for divorce through the hearing totaled $14,862.70. Mr. Howell was ordered to pay this entire amount. Mr. Howell contends that he did not have the ability to pay, that Mrs. Howell could have paid her own fees over time, and that Mrs. Howell's lack of cooperation inflated the amount of the fees.
 {¶ 30} Mrs. Howell presented the testimony of attorney Terri Parmley that the amount of her attorneys fees was reasonable, and Mr. Howell did not attempt to refute this testimony. The trial court did not make an express finding that Mrs. Howell's attorneys fees were reasonable, but such a finding is implicit in the court's entry and is supported by the record.
 {¶ 31} Mr. Howell claims that he did not have the ability to pay and that Mrs. Howell could have paid her own fees over time. Given that Mrs. Howell's annual income in the first year following the divorce, including spousal support, would be only slightly higher than the amount of her attorneys fees, we find Mr. Howell's suggestion that she should be able to pay these fees off on her own to be unfounded. We find no fault with the trial court's assessment that Mr. Howell had minimal living expenses of his own, had recently discharged all of his debts in bankruptcy, and had the ability to pay. Moreover, there is no evidence that Mrs. Howell acted uncooperative and thereby inflated her fees, as Mr. Howell suggests. Thus, the trial court did not abuse its discretion when it ordered Mr. Howell to pay Mrs. Howell's attorneys fees in total.
 {¶ 32} The fifth assignment of error is overruled.
 {¶ 33} The judgment of the trial court will be affirmed.
FAIN, P.J. and YOUNG, J., concur.